So, Mr. Wright. Thank you, Your Honor, and may it please the Court. I am Matthew Wright here on behalf of Michael Herrold, and we're asking this Court to vacate this case under the Armed Career Criminal Act. Now that the Supreme Court has struck down the ACCA's residual clause, this case is easily resolved in Mr. Herrold's favor, and the controlling authority is Shepard v. United States from the so-called burglary offense, which is committed against a vehicle, is not generic burglary. It is not a violent felony under the ACCA. Mr. Wright, those phrases you have pulled out of the different case law, and certainly highlighted them for us. Shepard says that. Other cases say that. It seems to me that's vehicle, qua vehicle, and what the state is arguing, the government is arguing, that these are vehicles as habitations, which is all that Texas is trying to apply this to. What authority do you have that a vehicle across the board, no matter what its purpose is, is beyond the reach of generic and temporary meaning of burglary? Your Honor, I would say that the Shepard case would be . . . Which says that, but actually analyzed a case like ours, that has a statute like ours, that actually analyzed it this way. Our authority for that would be Griselle, the en banc Ninth Circuit opinion that we cited. What circuit again? Ninth Circuit, en banc Ninth Circuit. If we could add to that, the government was kind enough to cite on page five, or little v, of its appendix to the supplemental brief, United States versus Enriquez or Henriquez from the Fourth Circuit. That's another court that has held that a statute just like this one, not even just like this one, but the fact that it might possibly be committed against a vehicle, was enough to drive that court away from applying even the guideline enhancement, which is broader in this circuit. I'd also point out, and I worked on a 28J and couldn't get it ready, there's a case called the United States versus Priddy, P-R-I-D-D-Y, from the Sixth Circuit. That's from December 15th of 2015, so just a couple of weeks ago. The holding of the court really doesn't address this point. It's not unlike our decision in Silva, this court's decision in Silva. They're not addressing the vehicle distinction, but Judge White concurred separately to say, not so fast, we should not say that Tennessee's aggravated burglary statute, one of the ones cited in the government's brief, is we shouldn't say that it's a violent felony because it could be committed against a vehicle. So all of these are lines of authority, I think, directly responsive to your question, Judge Southwick. I would also point out, it's not a perfect analog, but if this were the Fourth Amendment case, and if my friend's agents were trying to search a vehicle, it's not being actively used as a resident, it's a vehicle. But these are all things that we're reaching for because the Supreme Court has said categorically, vehicles are not included within the definition of violent felony. I'd also point to legislative history, which is something that the government's focused on, something that Taylor focused on. The 1984 version of the Armed Career Criminal Act specifically enumerated a definition for burglary, and that definition was limited to buildings. And Taylor said, repeatedly, that in 1986, when Congress deleted that specific definition, this wasn't intending to create a great change in the definition of burglary. It was probably an accident of a complex drafting process, but the Court said repeatedly, in quotes I'd be happy to read, that it's practically identical to the enumerated definition in 1984. What's the argument you mentioned relating to the automobile exception in the Fourth Amendment? Is that something you brought up in your brief or not? It's not, Your Honor. I've been thinking about Judge Southwick's question over the weekend. So the point you're making is if a vehicle is hooked up to utility lines and electrical, then it's a home, and there would be no automobile exception. But if it's movable, you're saying then the Fourth Amendment treats it as a vehicle, and that would be more analogous to what you think Texas's law applies to here? Yes, Your Honor. And as of the first part of that, I think that's assumed from the case California v. Kearney, the 1985 decision, 471 U.S. 386. And it said, insofar as that was a motorhome that was not being used, it wasn't fixed, in that case, they said, the automobile exception applies to this. You don't need a warrant to search it because it can be moved. Now, there are different policy concerns associated with that. But you're talking about the Constitution versus what the United States Supreme Court says we should be looking for the contemporary generic meaning of this crime. And it does seem to me whatever intersections there are between Fourth Amendment analysis and what we're talking about now, the key for us is what is the contemporary generic meaning of burglary for purposes of determining whether the Texas statute complies. Interesting side issue that— Agree, Your Honor. And in returning to that point, what's the contemporary and generic meaning of the word burglary? It is—the Supreme Court has focused on the contemporary meaning in several states, but this Court is not free to write on a blank state—on a blank slate, excuse me. What you have is Shepard. We think Taylor—we would win under Taylor, but Shepard very clearly says— Why do you win under Taylor if the Court doesn't just say building? It says enclosed space and structure. And so if Texas says burglary includes vehicles that have been adapted to overnight use, that's sounding like enclosed space and structure. It's like a shed. Your Honor, I think that we cannot define enclosed space as broadly as the government would like to. Taylor itself implied that the train cars—or is cited as one of the examples of states which have defined burglary more broadly than it's generic. But isn't the Supreme Court in Decamp and all the cases you cite, they're distinguishing between what's a transportation as distinct from a home. Everyone thinks home invasion, violent. Vehicle, nonviolent. But what here we're hypothesizing about is a motor home. So it's necessarily both. If you stress the home, the motor home fix, then you're agreeing it's a home. It qualifies as violent. And by Texas having said adapted for overnight use, it sounds like you're in the world to me of residence, habitation, dwelling, where people could get hurt, and that would fall on that side of the line. It's a difficult line, but why not? Your Honor, a couple of responses to that question. The first one being if it is a difficult line, if it's a close question. We know after Johnson that principles of fair notice apply here. So this Court should not expand the Supreme Court's definition, which says very clearly, repeatedly, no vehicles, should not expand it to include, well, some vehicles. So that's one reason why. We couldn't apply that retroactively to Mr. Harreld's possession of a firearm. Second, I would say that the Texas definition is even broader than that. It's not just things that are homes that someone could be living in. If you put a cot in the back of a van, that is a habitation under Texas law. It's also, undoubtedly, a vehicle. It is transportation. It is something with four wheels and an engine that could be driving down the highway, right? It would be difficult to burglarize something that was moving, right? Something could be parked. Like the case that we cited in a storage facility, no one is living there. There is no risk in the case that we cited of Texas applying the burglary of a habitation statute in this non-generic way. Well, counsel, doesn't that just come down to almost a matter of frequency? You can have newly constructed homes. You can have homes that are in between ownership. There's nobody in there. What we have is a broad-based statute that covers all sorts of factual situations, so long as the structure or building meets the definition. So is a brand new home that's never been occupied in, would burglarizing of that somehow create an issue under your view of Taylor and Sheppard and not being within the contemporary generic definition? Let me assume your answer is no. So why would it be any different in the situation you're in? I mean, think of it in terms of RVs, but if you want to take it further, but you were talking about an RV. Not at that time being used, just like many residences at that particular time will not be used as habitation. It's just part of the generalization of statutes. Your Honor, I think I would agree with that. The difference is that one of them is a building. One of them is generic burglary. One of them is what we've always had. They're both structures, though. Your Honor, I think we should not define structure so broadly in a way that it essentially negates what the Supreme Court has said. Now, structure just means any space that's enclosed. Vehicles are included. Train cars are included. Things that the Supreme Court has told us are not included, right? So in that sense, the government's definition of structure or enclosed space really proves too much. It scoops in things that we know are not venues for generic burglary, right? So my definition has the advantage of being what the Supreme Court has repeated over and over and over again. Vehicle, no. I'm not saying that. Did the Court ever, in those repeated cases, consider motor homes, vehicles that were overnight abodes? Your Honor, that was not explicitly considered. I agree. At a more simple level, what's your best argument against Silva as binding authority on this? Silva, if it had ruled on this question, would have been overruled by Shepard. So your argument is that the Supreme Court cases that subsolentio have overruled Silva, or that Silva isn't binding in its holding? I guess argument number one is Silva does not hold that this part of the habitation definition satisfies it. What Silva says on page 162 of 957F2, Section 30.02 of the Texas Penal Code is a generic burglary statute punishing nonconsensual entry into a building with intent to commit a crime. So that is what Silva said. A subsequent panel of this Court, Judge Higginbotham sat on the Constante panel, held that we can't read Silva so broadly as the government does here. We can't say all 30.02 burglaries. We have to look at what part of the statute Silva was considering. Your client pled to both parts that the Constante panel looked at. I agree. The holding of Constante is not an issue in this case, other than in the foreclosed sense that we've preserved in our brief. But what Constante shows us is that we have to read Silva carefully. And Silva's own holding says it punishes nonconsensual entry into a building. Obviously, the panel was not considering that the statute also punishes nonconsensual entry into a vehicle. And so in that sense, we think that Silva did not hold that a habitation, which is a vehicle, right, is generic burglary. Silva did not hold that. So that's the first argument. The second argument— What's your best authority for that duck of stare decisis? That the holding is overbroad as it was written without contemplating, I think, substantially similar facts later. Is that what you're saying? I think Constante is the best— No, but I'm asking really on the stare decisis point. Where would you point to that we can, as another panel, ignore the published decision Silva? Your Honor, I think we've cited—both sides have cited cases on whether or not— What's your best case for the ability of us to disregard Silva? As to which one is the best, I'd like to get back in rebuttal. I need to think about it for a minute. I think that there's authority that says if the panel did not consider it, then it's not binding. And I'd also say that the holding of Silva itself, right, it is the words of the statute says a building. In other words, so if it punishes a building, and we know that it punishes a vehicle, then that cannot be considered to say that 30.02 is generic burglary when it's committed against a vehicle. And I apologize for not having the case directly at hand, but— Go ahead with your argument. Silva itself, in other words, Silva itself is authority that says it doesn't reach the question that we presented to you. If it had, if Silva had addressed this question and said explicitly the fact that this can be committed against a vehicle, it's still generic burglary, we have Shepard after that. Shepard says very clearly that if it's committed against a vehicle, or even if we can't tell whether the target of this burglary offense was a vehicle or a building, the government loses, the defendant wins. And then this is not an offhanded or an accidental language we lifted from the Supreme Court opinion. They have now picked it up and made this the textbook example of qualifying versus non-qualifying, of violent versus non-violent conduct. In Descamp, in Gonzales versus Duenas Alvarez, in— Those rulings still have left a split out there, right? In other words, not only do you have the Ninth Circuit with a substantial dissent, but you've got the Eighth Circuit disagreeing with Griselle, citing Silva as authority to disagree with it, post those Supreme Court cases. Your Honor, I think you're right, and this is why, returning to the point that I started with after Johnson, I think that a tie goes to the defendant in this case. We are in real danger interpreting the statute in a way that an en banc court, right, even before Shepard, right, the en banc Ninth Circuit would say it doesn't reach a statute like this. You've also got the Fourth Circuit, which went so far as to say, I mean, if you look at the Maryland statute that was issued in the Henry Kez case, it doesn't say vehicles. It's not nearly as explicit as ours is. It wasn't a case, as we've shown you, where it—a mothballed motorhome. And that's the other thing that I just—I want to end on the fact that we are not talking about things—places where people are living. We are talking about something that is mothballed, in storage. The fact is, most of the vehicles that satisfy this part of the definition are not being used at any particular time. And for that reason, we think it would be inappropriate to affirm this sentence, and we'd ask this Court to reverse. I reserve time for rebuttal, unless the Court has any further questions. Thank you, Counsel. May it please the Court. Brian McKay on behalf of the United States. I think that's a perfect point, a segue to my argument, because I want to emphasize, if nothing else, this notion that Texas is in a minority position because under its laws, he would have it—throwing a cotton to the back of a van converts it into a habitation. It's wrong, and it's wrong for at least two reasons. First, it's an incorrect statement of what Texas law is. The Blankenship case that I've cited in my supplemental brief notes that very thing. It points to a prior decision, the Texas Court of Criminal Appeals prior decision in Jones, where they looked at this issue of what does it mean to be adapted for overnight accommodation. Is it capable of? No, it's not just simply capable of overnight accommodation. They rejected that in Jones because using the Court's language, any pickup truck that could have bedrolls in the back would then be a habitation, and that's not correct. Instead, in Blankenship, what the Court said was whether something is a habitation under Texas law is a complex, factual issue to be determined by the jury, and in doing that, it's to consider several factors, including whether it was actually used or intended to be used as a habitation, whether it had bedding and other accoutrements that you would expect in a habitation, whether it had utilities such as electricity, heating and air conditioning, water and sewer. So to say that simply throwing a cot in the back of a van converts it into a habitation under Texas law is incorrect. Instead, Texas, like other states, recognizes those vehicles that were adapted for, that were intended, used for, had all the markings of an overnight abode. What would Blankenship, in your view, hold as to the applicability of burglarizing of RVs on a sales lot? Well, in the case of Mr. Sandoval that Mr. Harreld relies on, there, first, I would point out that Mr. Sandoval pled guilty to that fact, that the seven RVs in storage, now these were in storage. I don't know that they were pending sale. I think that they were in storage. Storage is the way they've already been described, and so what I'm trying to do is adjust this to, I don't know how well they're selling, but I seem to pass it off from time to time, some lots with an awful lot of RVs on them that apparently nobody wants quite yet, and if that's what has been burglarized, how does Blankenship deal with that, would you say? Blankenship would say it's for a jury to determine, and if a person is charged with burglarizing an RV that hasn't yet sold, but was designed for, and people don't buy RVs so that they can run to the grocery store or things like that, what you would use a normal automobile for, they're bought for the purpose of overnight lodging and camping, not for just simple locomotion from one place to another. But when you look at Taylor and thinking about the contemporary generic definition and the risks of harm and all that goes, risks of violence, and all that goes into that, it seems to me the generic quality of a lot of statutes, burglarizing of residences that are unoccupied or just, you know, you could have an enhancement under state law, but if you're looking at a structure or building, whether it's occupied, whether it's for sale or whatever else, is not necessarily going to be relevant. But if you're trying to expand that as you are to motorized habitations, and you enter in a whole new universe, it seems to me create the kinds of problems that are inherent in situations as I just hypothesized, sales lot full of RVs, that don't seem to have anywhere near the frequency of risk of harm that contemporary generic definition of burglary is supposed to be focused on. So I'm worried about what you're asking us to do to extend this to a lot of situations that are far beyond the kinds of harms that Taylor was talking about inherent in contemporary definition. Well, I think that those situations, RVs on a sales lot that are would be akin to what Your Honor pointed out with my friend's argument, housing subdivisions that are completed but not yet occupied. You know, the Supreme Court, I think, in Taylor explicitly rejected the notion that actual occupation is a sort of a sine qua non of a generic burglary because they said that Congress certainly could have restricted burglaries to only those that present a greater risk of that violent confrontation, things such as where the burglary occurs, the burglar has a violent weapon, or where it's occupied. And they said that's not what Congress intended in the generic definition of burglary. So the line you're saying is enclosed space used for locomotion, nonviolent, enclosed space used for habitation, violent. Is that essentially it? Yes. I think that the line that the Supreme Court has drawn, and I think the Court is correct that in Taylor and since when the Court has talked about automobiles or cars or vehicles, they're talking about those vehicles used for mobility, moving people or things from one place to another, not overnight abodes, that Taylor incorporates at least those structures that are inhabitable. And the Fourth Amendment point that he's brought up in oral argument is not really illuminating or do you think you win under it? I don't think it is because that that is animated by a different concern. The whole automobile exception of the Fourth Amendment is animated by the fact that these things can move around and we might not be able to get a warrant at that immediate moment because it might be out of the jurisdiction. That's what animates the Fourth Amendment issue. Here we're talking about structures, the quality of the structure being used as a place where people live. However we rule, do you agree that there is a split? If we rule and reaffirm and affirm the conviction, the sentence here, then we've got a direct split at least with the Ninth and maybe other circuits? I think so. The Ninth Circuit, certainly. The Tenth Circuit, there's already a split. The Ninth Circuit, they were looking to what, Oregon? Oregon law, yes. The last two words of that Oregon statute as an or, there's an or in there, what significance of any of that have? Are you familiar with that Oregon statute? I am a bit, but I'm blanking on that particular or. I would point out that the Ninth Circuit, prior to Grisel in Sweden, actually credited the Texas statute and its distinction between habitation or actually a vehicle that's adapted for overnight accommodation and a motor vehicle, which by definition excludes the habitation. Where's the Sixth Circuit? The Sixth Circuit. Because you cited them in the pre-Johnson brief, the Prater decision saying this would count, but that was residual clause. And they had dicta on this point, which would have suggested they may be agreed with the majority in the Ninth. Do you agree? Do you remember that? I do recall that, and I do recall it being a residual clause decision, so that they did at least superficially credit that, okay, maybe it can't qualify as generic burglary because it includes habitations that are adapted for overnight accommodation. But again, if we go back. Let me come back to that Oregon statute. Yes. Or for conducting business therein. Yes. Oregon is not unlike a lot of states. I don't. What significance, if any, does that have? I think what it points out is that Oregon, like a lot of states, protect, under burglary statutes, inhabitable structures. So it's not just structures where people live, sleep, eat. But it protects from burglary, yes, but it protects in situations where they're not necessarily the element of violence, the threat of violence, which is the underlying phenomenon that I think we're trying to, these statutes are trying to reach. There's a much greater risk and threat of violence in breaking into a home, right? And as you move, and you start moving away from that, that dynamic changes to some extent. But it changes dramatically when you talked about move to a business that's distinguished from a home or where a vehicle that's being lived in. True. True. But again, we're still talking about inhabitable. This goes back to the question of whether there is a split, or whether we would create a split or not. It's a friendly question. It's a friendly question. I understand. I understand that. And. I understand that. And in that sense, yes, Oregon statute is much broader than Texas. Texas includes only those mobile structures that are adapted for, which I think incorporates intended for, used for overnight accommodation. And Oregon's goes more broadly. And as I pointed out in the appendix to the supplemental brief, a vast majority of states would protect those structures. So I don't. Are we free to treat Silva as non-binding? I don't believe so. There's no dispute between us that dicta doesn't bind this panel. But when we look at what was the holding of Silva, Constante itself says this court previously held that the offensive burglary of a habitation under Section 30.02A1 qualifies as a generic burglary for the purposes of 924E. What if it's a home that's not being built for habitation? You're from Dallas? I am. Abbey Halliday's home is out there on the Northwest Highway. It's a lovely home, but it's not a home for habitation. It's a sales office. Right. And I would submit that Graceland isn't really a home. What do you do? How do you fit that in this category? I think it's a fact issue for a jury to determine. And they may say that although it has walls and a roof and utilities and things like that. It's outfitted. And then you have the demonstration homes that are not being used for habitation at all. They're just model homes. Yes. And they may be located in a place where they're never really going to be. You go down to 281 here in San Antonio, you'll find in many cities places where you have two or more model homes built on the sides of major highways. They're never intended for construction, to be occupied. They aren't. How do you fit that? It goes back to the question of structure versus usage. You can build a home, but do you have the additional element of, you say, of actual use, which is external to the structure of the statute? Now, that's your blankenship argument. Right. And it is still an inhabitable structure. People can live there, do business there, even though that wasn't the intent of that structure at that time. And you have these spec homes that then are converted to actual homes. Now, these homes are never intended to be used. They're model homes on the sides of highways. They're demonstration homes. No one's going to live there. They don't want to live on the freeway. And that would be the perfect argument to make to a jury. That would be the perfect argument to make to a jury why a particular defendant should be guilty of burglarizing a building rather than burglarizing a habitation. But here, Mr. Harold, and using his example, Mr. Sandoval, pled guilty to burglarizing things that were, as a matter of fact, habitations. I want to note, another thing that he had argued was that Texas is in a mortality position because it doesn't require that actual use. But Texas is actually in the majority in that it's like other states, a majority of states that protect under burglary statutes those, as habitations, those buildings and other structures, including mobile structures that are designed for, adapted for, or intended for use for overnight lodging, things like motor homes, clearly protected by, I think in my footnote, it said at least 41 states. One other question. What do we do with a significant number of people today, sadly, that are living in vehicles and there's no modification to them in the sense that they certainly don't have sewer lines or anything else connected to them, but they've got bedding there for children and whatever, and they're just living in those cars and trucks. And again, I can't, I can't with precision say what the outer bounds of Texas law is as far as what would be a habitation. A significant number of people that are living that way. But I don't think that the fact that they are actually, for instance, sleeping in the back seat would necessarily afford protection of that vehicle as a, as a habitation. What would you say under your continuing return to blankenship that that would be an issue for the jury? And I don't know if the issue would be under the definition, a structure or vehicle that is adapted for the overnight accommodation, and that would just be given to the jury? It, it would. And at some point it would have to be, the outer bounds would be, I guess, discussed by a Texas appellate court, which has never been done. But Jones. You have these multi-purpose things. You have horse trailers that commonly have some living quarters on the front end of them, and they're used for habitation that shows. Right. Those are the fancier horse trailers in Dallas, I believe. Your Honor, growing up I never had one quite that fancy, but I've seen them and I'm familiar with them. They're common shows, I promise you that. Oh, I've seen many of them. But, but again, going back to the intent of Congress and including all burglaries of buildings and structures, and I would suggest that that means inhabitable structures. When they said automobiles and vending machines, those are not inhabitable structures. But going back to the intent of, of Congress, those, the fancy horse trailer, things like that are inhabitable when the whole purpose of including burglary in the ACCA was because those burglaries of inhabitable buildings and structures are, have a propensity to devolve into a violent confrontation. Not so with vending machines and automobiles. But when you're breaking into a place where people eat, sleep, live, even do business, there's, there is that propensity to, for it to devolve into a violent confrontation, and Congress intended to capture all of those. Nothing that the Court has said, nothing that Congress did implies that by incorporating burglary into ACCA, they meant to exclude those burglars that break into mobile inhabitable structures. I think that, that Mr. Harold's argument really has four primary disadvantages. I think first, it has the problem of being inconsistent with Taylor. Second, it has the problem of being inconsistent with the intent of Congress, as explained in Taylor. Third, it's inconsistent with a majority of states' burglary statutes, and fourth, it would result in sort of an absurd result, where at least under Texas law, and I'd submit that under several other states, if we follow him to his conclusion that Texas burglary of a habitation isn't a generic burglary, we end up with an anomalous result where, in Texas, burglars who have a history of breaking into non-residential buildings, things like barns and warehouses and things like that, wind up being non-residential structures, be they a home or a motor home, don't get the ACCA-enhanced penalty. You listed four reasons. The first was it's inconsistent with Taylor. How is it inconsistent with Taylor? I can see how it might be in tension with the intent of Congress to perceive home invasions as the worst type of violence-threatening activity, but what's the language in Taylor that this would be inconsistent with? It's buildings and structures. Oh, and a motor home is a structure. A motor home is absolutely a structure, and it's an inhabitable structure. In fact, motor homes are designed to be inhabited, unlike a vehicle where someone sleeps in the backseat or something like that. So, yes, it's inconsistent with Taylor. It's inconsistent with Taylor. It's inconsistent with Taylor. It's inconsistent with Taylor. It's inconsistent with Taylor. It's inconsistent with Taylor. It's inconsistent with Taylor. When we look at Taylor, and we see what the Court has said about the generic definition of burglary, we see that it encompasses buildings and at least those structures that are designed for, intended for, accommodated for, in habitation. I should know this, but in Griselle, did the case, and I'm sorry, I don't know, because I think that the Court relied on its prior decision in Sweden, which applied the Texas statute. So the government won below, went en banc, as far as you know, no cert filing? I think that's correct. I think that's correct. I'm not certain of the cert filing. I have seen an adverse decision memo, but I don't think it, I don't know the position there. Whether or not the Court is bound by Silva, that Court reached the right result, that Taylor, in defining generic burglary, certainly included not just buildings, but obviously buildings and structures. And in doing that, it incorporated at least those structures that are mobile, but that are designed, intended, or used for a place of overnight accommodation. For that reason, unless the Court has any additional questions, I would ask the Court to affirm the judgment. Thank you, Counselor. Your Honor, to start off to answer Judge Higginson's question, I apologize I wasn't ready with these citations. These are on page 14 and 15, bottom of 14 of our initial brief. Cooper Industries versus IVL Services, questions which merely lurk in the record, neither brought to the attention of the Court nor ruled upon, are not to be considered as having been so decided as to constitute precedence. We also cite an old decision from Chief Justice Marshall. It's a well-established principle of stare decisis. Cooper's a dicta case, really, right? It's not when you have the holding. I guess that gets back to you, say the holding isn't just 3002, is generic, it's 3002 as to a building. Right, because that's what Silva said. The panel said so. We also know it isn't 30.02 as a whole, because the subsequent panel said so, right? Silva says nothing about A1 versus A3. It took Constante to come and look at what Silva was actually talking about to do it. We're just asking you to do the same thing that the Court did in Constante. Silva tells future panels it's talking about buildings and not vehicles. I think a question that has gone unanswered from the government is at what point in time did vehicles, meaning things with four wheels and an engine that go down the highway, at what point did they become part of the generic burglary definition? I think we all agree that they aren't buildings, and the statute in 1984 was limited to buildings. What's your answer to Judge Higginbotham's question about Griselle that the Oregon statute had or conducting business in it, which does sound overbroad, not home business? Well, Your Honor, I think that buildings which you can conduct business in are protected by generic burglary. They are included within it, right? That's what Taylor says. So the distinction that Taylor draws is let's eliminate the distinction based on how this place is used. The distinction is, is it a building or structure or is it a vehicle? An automobile is what Taylor uses. Shepherd makes it very clear that it's a vehicle. So I think that the fact that a business could be carried on within the place is not something that makes the difference between violent or non-violent because buildings are protected by generic burglary. This is sort of a general theme for this argument, right, is we have something very clear, categorical, without exception from the Supreme Court, which I will concede may not have considered the point of motor homes, but categorical language, which says if it's against a vehicle, it's not generic burglary, it's non-violent, right? And we are applying that against a decision from this court that explicitly says it's talking about buildings. Would you say that language in Taylor is more or less categorical than our language in Silva? We're trying to say what is dictum and what controls. So what we have from Silva is a subsequent panel that said Silva doesn't hold what it appears to. It's not 30.02 as a whole. It's not talking about A3. A3 isn't implied in We also have subsequent authority from a superior court, which is Shepard, which I think is the case, as I said at the beginning, we're on all fours with Shepard. It absolutely resolves it. But it's not just something that sort of sat out there like Silva has. The Supreme Court has picked this up and made this the textbook example of qualifying versus non-qualifying conduct. We'll need another opinion from the Supreme Court to know for sure, and there's probably one coming if the split does indeed develop. But it does seem to me that the And if in modern society, a large number of people are living in things that you would want to call vehicles, but they call their home as well as being a vehicle, then we have cut out, I know your argument, a large number of situations in which burglary is at its most dangerous to people who are living in these in these structures. So it does seem to me a heart. We're not talking about common law burglary, as Taylor makes clear. We're talking about generic. And this is a very contemporary habitation. Your Honor, that policy concern, which is expressed very eloquently in the government supplemental brief, is best directed at the institution of Congress, because Congress is the one that defines the scope of the Armed Career Criminal Act enhancement and what prior convictions apply. One party standing before you has the ear of Congress, right? And if this is a way that we need to expand the definition of Congress will do what the Justice Department says. I'm saying that they will at least listen to the Justice Department. They will not listen to Michael Harreld, right? He does not have a seat at the table there. These questions, these policy questions about what should be included, or shouldn't be included, are best directed at Congress and alternatively to the Supreme Court. I'm sorry, Your Honor, made to depend upon Congress for clarity. Your Honor, if not Congress, the Supreme Court. And we would say the Supreme Court's clearly hailed. If it's a vehicle, it doesn't count. All right, counsel. Thank you, Your Honor.